```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
SCRILLA HILL ENTERTAINMENT INC., et al.,                        :
                                                                :
                        Plaintiffs,                             :     16-CV-490 (JMF)
                                                                :
        -v-                                                     :     OPINION AND ORDER
                                                                :
BIANCA DUPREE, et al.,                                          :
                                                                :
                        Defendants.                             :
                                                                :
----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/05/2016

JESSE M. FURMAN, United States District Judge:

Bad lawyering is a regrettably common phenomenon in today's courtrooms. Unethical lawyering may be less common, but it too rears its ugly head more often that it should. Judges have various tools to address such lawyering, but those tools must be deployed carefully to ensure that they do not deter lawyers and parties with colorable claims from pursuing those claims. The question in this case, which Plaintiffs Scrilla Hill Entertainment ("Scrilla Hill") and Arthur Dukes voluntarily dismissed after Defendants filed motions to dismiss, is whether the conduct of Plaintiffs' counsel, Israel Burns, was so bad or unethical as to warrant sanctions. Defendants NFGTV, Inc. d/b/a Eastern ("Eastern") and Viacom International, Inc. ("Viacom") argue that it was, and seek attorney's fees from Burns and his clients under the Copyright Act, 17 U.S.C. § 505; the Lanham Act, 15 U.S.C. § 1117(a); Title 28, United States Code, Section 1927; and the Court's inherent authority. The Court concludes that, while there is much to criticize in Burns's conduct, it does not (at least on the record presented) rise to the level that would support an award of sanctions. Accordingly, the motions are DENIED.

## BACKGROUND

The relevant background, drawn from the First Amended Complaint and from materials submitted in support of Eastern's motion, is largely undisputed. Defendant Bianca Dupree is a musical artist who performs under the name "Young B" and is best known for a 2006 hit, "Chicken Noodle Soup." (*See* Docket No. 36 ("FAC" or "First Amended Complaint") ¶¶ 1, 58). According to the First Amended Complaint, in a 2009 recording agreement and a 2006 predecessor agreement, Dupree granted to Scrilla Hill certain exclusive rights to her musical works and her "name, likeness and biography," and assigned to Scrilla Hill a fifty percent "interest in and to the copyrights (and any extensions and/or renewals thereof) in all musical compositions and/or selections written, owned or controlled, in whole or in part, by [Dupree], directly or indirectly." (FAC, Ex. B §§ 1(c), 6(a)).

In April 2015, Dupree was selected to appear in the television series *Love & Hip-Hop: New York*, which is produced by Eastern and broadcast by Viacom. (FAC ¶ 38). Dupree's participation in the series became the subject of a dispute between her and Plaintiffs here — Scrilla Hill and its principal, Arthur Dukes — and eventually led her to file a lawsuit in New York State court seeking a judicial declaration that her agreements with Scrilla Hill were void and unenforceable. On January 6, 2016, Scrilla Hill and Arthur Smith,[1] acting through Burns, removed that lawsuit to this Court. (*See* 16-CV-0087, Docket No. 1). Shortly thereafter, Dupree voluntarily dismissed the action. (16-CV-0087, Docket No. 15). Notwithstanding the dismissal, Burns attempted to file a third party complaint against Eastern and Viacom; the Court dismissed it without prejudice to filing a new action. (*See* 16-CV-0087, Docket Nos. 16, 1920).

---

[1]   Dupree named Scrilla Hill and "Arthur Smith" as defendants in her state court action, whereas the present case is brought by Scrilla Hill and "Arthur Dukes." Differing surnames aside, it stands to reason that these two parties are, in actuality, the same Arthur.

2

This case, filed by Burns on January 25, 2016, was that new action. Scrilla Hill and Dukes sued Dupree, Eastern, and Viacom, alleging that Viacom's VH1 had "aired no less than four (4) episodes featuring Ms. Dupree, her musical compositions, and her likeness," thereby breaching the agreements between Dupree and Scrilla Hill. (Docket No. 1 ¶ 4). Seeking a million dollars for each claim, Burns's Complaint asserted claims against Dupree, Eastern, and Viacom for violations of the Lanham Act and the Copyright Act; claims against Eastern and Viacom alone for tortious interference with contractual relations, for tortious interference with business relations, and for unjust enrichment; and claims against Dupree alone for breach of contract. (*Id.* ¶¶ 55-92). Following an initial pretrial conference, Eastern and Viacom filed separate motions to dismiss on April 29, 2016. (Docket Nos. 31-32). On May 2, 2016, the Court granted Scrilla Hill and Dukes leave to amend the Complaint in light of the motions to dismiss, and they did so on May 20, 2016. (Docket No. 33 ("May 2, 2016 Order")). Dupree, Eastern, and Viacom had until June 10, 2016, to respond to the First Amended Complaint. (*Id.*).

Prior to that deadline, counsel for Eastern and Viacom had multiple private exchanges with Burns regarding the basis for the copyright claims in the First Amended Complaint. For example, on May 26, 2016, counsel for Viacom provided written notice to Burns that "Chicken Noodle Soup" had not been played in the episode of *Love & Hip-Hop: New York* identified in the First Amended Complaint. (*See* Docket No. 57 ("July 27 Rosenberg Decl."), Ex. 1 ("June 10 Rosenberg Decl.") ¶ 2; *see also* June 10 Rosenberg Decl., Ex. A). Burns did not respond in writing. On June 2, 2016, counsel for Eastern spoke to Burns on the telephone; in their conversation, Burns claimed that his clients owned the rights to the "Chicken Noodle Soup" music video, a segment of which was played without sound in the VH1 series. (June 10 Rosenberg Decl. ¶ 4). Thereafter, Eastern discovered that claim was false; in reality, UMG

3

Recordings, Inc. ("UMG") owned the rights to the music video, and Eastern had licensed the use of the video from UMG. (June 10 Rosenberg Decl. ¶ 6; *id.*, Ex. B). On June 9, 2016, counsel for Eastern wrote to Burns providing that information and demanding again that he dismiss the copyright claims. (June 10 Rosenberg Decl. ¶ 7; *id.*, Ex. C). The same day, Burns responded by e-mail stating that if Eastern had an agreement authorizing the video's use, Eastern should attach it to its motion to dismiss. (June 10 Rosenberg Decl. ¶ 8). Notably, Burns further stated in the e-mail that "[a]ll of the facts and allegations set forth in the complaint were verified by my client, and I know them to be true." (*Id.*).

The next day, on June 10, 2016, Eastern and Viacom filed updated motions to dismiss and attached the licensing agreement with UMG. (Docket Nos. 38, 41). Thereafter, the Court denied the old motions to dismiss as moot and set a briefing schedule for the new motions to dismiss, with Burns's opposition due on July 8, 2016. (Docket Nos. 46, 48).[2] Up until that deadline, Burns continued to make settlement demands on Eastern and Viacom. Despite those demands, no opposition brief ever materialized. Instead, at approximately 10 p.m. on July 8, 2016, the opposition deadline, Burns filed a notice voluntarily dismissing Plaintiffs' claims without prejudice. (Docket No. 51). The case was thus terminated, but at the request of Eastern and Viacom, the Court retained jurisdiction to resolve their anticipated motions for attorneys' fees. (Docket Nos. 52-53). On July 14, 2016, Burns sent an e-mail to Eastern's counsel,

---

[2]     Prior to that time, the parties had been discussing and apparently had agreed upon a stipulated briefing schedule. (*See* Docket Nos. 47, 49). In light of the Court's scheduling order, however, Eastern and Viacom informed Burns, correctly, that an application for an extension was a more appropriate submission. (*See* Docket No. 49). In response, Burns unilaterally filed a letter motion that suggested, misleadingly, that Defendants had engaged in underhanded tactics and that left out Defendants' request for an extension to their reply deadline — issues that Defendants clarified in a subsequent letter motion of their own. (Docket Nos. 47, 49).

apparently in reaction to Eastern's indication that it would seek sanctions, stating in full: "You are a total and complete dick."  (Docket No. 57 ("July 27 Rosenberg Decl.") ¶ 7; *id.*, Ex. 3).

## DISCUSSION

Eastern (joined by Viacom) contends that an award of attorneys' fees is warranted under the Copyright Act, 17 U.S.C. § 505, and the Lanham Act, 15 U.S.C. § 1117(a), as well as Title 28, United States Code, Section 1927, and the Court's inherent authority.  (*See* Docket No. 56 ("Eastern's Mem.") 9-21; *see also* Docket Nos. 58, 60).  Eastern's first two theories (*see* Eastern's Mem. 9-17) are easily rejected, because the Copyright Act and the Lanham Act allow a court to grant attorneys' fees only to "a prevailing party."  *See* 17 U.S.C. § 505; 15 U.S.C. § 1117(a).  In light of the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), to qualify as a prevailing party, "a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also judicially sanctioned."  *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003); *accord Ninox Television Ltd. v. Fox Entm't Grp., Inc.*, No. 04-CV-7891 (DLC), 2006 WL 1643300, at *2 (S.D.N.Y. June 13, 2006).  Those requirements are not met where, as here, a plaintiff voluntarily dismissed a complaint without prejudice.  *See, e.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, No. 13-CV-7574 (KPF), 2015 WL 321877, at *4 (S.D.N.Y. Jan. 26, 2015).  "[S]uch an act is not 'judicially sanctioned' since no court action is required."  *Magder v. Lee*, No. 14-CV-8461 (JFK), 2015 WL 4887551, at *2 (S.D.N.Y. Aug. 17, 2015).  In addition, "a dismissal without prejudice is not a change in the legal relationship between the parties because plaintiff can still bring the claim again."  *Id.*

Notably, Eastern failed to cite *Buckhannon* in its opening brief, relying most heavily instead on Judge Kaplan's pre-*Buckhannon* decision in *Great American Fun Corp. v. Hosung*

*New York Trading, Inc.*, 96-CV-2986 (LAK), 1997 WL 129399 (S.D.N.Y. Mar. 20, 1997).  (*See* Eastern's Mem. 10-12, 14-15).  If this Court were writing on a blank slate, it might well agree with Judge Kaplan's analysis and conclusion, but they are no longer sound in light of *Buckhannon*.  Eastern also relies on a trio of post-*Buckhannon* district court decisions (*see* Docket No. 60 ("Eastern's Reply") 7-8), but those decisions — all of which are from well over a decade ago, and two of which were issued by the same judge on the same day — do not mention, let alone distinguish (let alone *persuasively* distinguish), *Buckhannon* or its progeny.  *See Silberstein v. Digital Art Sols., Inc.*, No. 02-CV-8187 (GBD), 2003 WL 21297291, at *1 (S.D.N.Y. June 4, 2003); *Szafarczyk v. Digital Art Sols., Inc.*, No. 02-CV-5481 (GBD), 2003 WL 21297293, at *1 (S.D.N.Y. June 4, 2003); *Ackerman v. Pascal*, No. 01-CV-10791 (JSM), 2002 WL 31496206, at *1-2 (S.D.N.Y. Nov. 7, 2002).[3]  In light of clearly binding authority from the United States Supreme Court, the Court declines to follow those decisions and denies Eastern's and Viacom's request for fees under the Copyright Act and the Lanham Act.

Eastern's and Viacom's motions thus turn on their third and final theory, namely, that the Court should impose sanctions on Burns and his clients pursuant to Title 28, United States Code, Section 1927 and the Court's inherent authority.  (*See* Eastern's Mem. 17-21).  Under its inherent powers to supervise and control its own proceedings, a district court has authority "to assess costs and attorneys' fees against either the client or his attorney where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks omitted).  Similarly, under Section

---

[3]   Eastern also cites a case from the Middle District of Florida that briefly notes the conflict between *Buckhanon* and the decisions in *Silberstein*.  (Eastern's Reply 8 (citing *Salas v. Marietta*, No. 6:11-CV-1909-ORL-31 (GJK), 2012 WL 398264, at *2-3 (M.D. Fla. Feb. 8, 2012)).  But that Court found sanctions were unwarranted even if *Silberstein* were good law.  *See id.* at *3.

1927, a district court may award attorney's fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.[4]  Before imposing sanctions "under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).  Moreover, the bad faith requirement has been interpreted "restrictively." *Id.* (citing cases); *see also, e.g.*, *United States. v. Seltzer*, 227 F.3d 36, 41 n.2 (2d Cir. 2000) (noting that "the threshold finding required to justify sanctions . . . is extremely high" and that "the court must find that the very temple of justice has been defiled by the sanctioned party's conduct" (internal quotation marks omitted)).  If sanctions are imposed, the Second Circuit demands "a high degree of specificity in the factual findings" of the district court.  *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).  These safeguards seek to ensure that "fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." *Id.*; *see also Mackler Prods v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998) (describing as "troublesome" the fact that the "trial court may act as accuser, fact finder and sentencing judge").

---

[4]  "In practice," the Second Circuit has explained, "'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (alteration in original)).  Because the present motion focuses exclusively on the conduct of counsel, any distinction between the Court's statutory and inherent authority is largely irrelevant here.

Applying those standards here, the Court is reluctantly compelled to deny Defendants' application for attorney's fees. Eastern's chief complaint is that Plaintiffs' copyright claim was frivolous. (*See* Eastern's Mem. 1-2, 10-14, 19). That certainly seems now to be true (and Plaintiffs do not really argue otherwise). But significantly, Burns was put on notice that the claim was meritless only *after* Plaintiffs had filed the First Amended Complaint and, thereafter, Plaintiffs made no more filings other than the notice of voluntary dismissal. Further, although Eastern and Viacom put Burns on notice that the song was never actually played in the series shortly after the First Amended Complaint was filed, Burns suggested in a follow-up telephone conversation that his copyright claim could proceed based on Plaintiffs' rights in the music video that, neither side disputes, *was* played (without sound) in the series.[5] That theory also proved to be frivolous, but its frivolity was not made clear to Burns until June 9, 2016, when Eastern provided written notice to him that the rights to the video were owned by UMG and that UMG had granted Eastern a license to play the video. (*See* June 10 Rosenberg Decl. ¶ 6-7; *id.*, Ex. C). Burns now appears to concede that "Defendants proved to [him] that" UMG owned and licensed the rights to the music video, but suggests that this occurred only after Eastern attached the UMG agreement to its June 10, 2016 motions to dismiss. (Docket No. 59 ("Pls.' Opp'n") 7). (The June 9, 2016 letter does not appear to have included supporting documentation). There is some reason to be skeptical of that claim, but the fact that Defendants may have been compelled to file

---

[5] Burns represents (albeit improperly, in his unsworn memorandum of law (*see* Eastern's Reply 4 n.2)) that he had claimed his clients owned the rights to the "Chicken Noodle Soup" music video by relying in part on a 2006 royalty statement and invoice that showed UMG had paid Scrilla Hill artist royalties. (Docket No. 59 ("Pls.' Opp'n") 6; *see id.*, Ex. A). Eastern's only response is that the significance of the royalty statement is "unclear." (Eastern's Reply 3 n.1). That may be true — for instance, it does not mention the music video for "Chicken Noodle Soup" as the source of royalties — but, on the existing record, the Court cannot rule out the possibility that Burns believed in good faith that it supported his clients' claim to rights in the music video.

8

motions because of a single day of *inaction* on Burns's part (particularly since the motions were presumably largely prepared by June 9th anyway) is a far cry from the sort of unreasonable or vexatious *actions* that call for sanctions.[6]

The cases cited by Eastern (*see* Eastern's Mem. 20-21) underscore that point, as each one involved substantially more egregious and/or more prolonged misconduct than the misconduct alleged here. *See Gollomp v. Spitzer*, 568 F.3d 355, 369-72 (2d Cir. 2009) (affirming a sanctions award where, among other things, the plaintiff filed a second amended complaint reiterating frivolous claims after being put on notice by several courts, counsel for New York State, and the assigned magistrate judge that the claims were barred); *Nemeroff v. Abelson*, 704 F.2d 652, 659 (2d Cir. 1983) ("[T]he District Court was probably entitled to find bad faith solely because Nemeroff and his attorneys elected to pursue the matter for *several months* after July 19, when they should have realized that they had no support for their charges." (emphasis added)); *Baiul v. NBC Sports*, No. 15-CV-9920 (KBF), 2016 WL 1587250, at *5–6 (S.D.N.Y. Apr. 19, 2016) (awarding sanctions where, among other things, the plaintiffs *actively* pursued a claim for breach of a specific written contract "*for more than a year* after plaintiffs admit they learned" they had never entered into that contract (emphasis added)).  Here, as noted, after amending the Complaint, Plaintiffs took no further steps — at least in Court — to pursue their copyright claim, but instead voluntarily dismissed the case, albeit at the (almost literal) eleventh hour.

---

[6] Burns also represents (again, improperly) that he did not withdraw the claim before Defendants filed their motions to dismiss because he was uncertain that the Court could take notice of the UMG agreement at the motion-to-dismiss stage.  (Pls.' Opp'n 7).  He ventures no explanation of any sort, however, for why he stated, in an e-mailed response to the June 9, 2016 letter from Eastern's counsel, that "[a]ll of the facts and allegations set forth in the complaint were verified by my client, and I know them to be true."  (June 10 Rosenberg Decl. ¶ 8). Moreover, it should go without saying that a party or a lawyer is not justified in pursuing a claim that he knows to be frivolous merely because, in light of the (knowingly false) allegations in his complaint, the claim would survive a motion to dismiss.

*Out* of court, Burns did continue to pursue Plaintiffs' claims — by making settlement demands until the eve of the voluntary dismissal. (July 27 Rosenberg Decl. ¶ 4). That conduct is, in some respects, the most troubling, and the Court certainly has authority to impose sanctions "even where bad-faith conduct does not disrupt the litigation before the sanctioning court." *Enmon*, 675 F.3d at 145. But the copyright claim that, by June 10, 2016, Burns knew or should have known was frivolous was only one of several claims brought by Plaintiffs in their First Amended Complaint. Thus, Burns's settlement demands (the specifics of which are not part of the record) could have been related to the other claims against Eastern and Viacom. (*See* FAC; Pls.' Opp'n 7-8). And while Eastern argues that those claims were also meritless, the Court never ruled on Defendants' Rule 12(b)(6) motions and is not prepared to find now, let alone by "clear evidence," that the claims were "entirely without color" and "brought in bad faith." *Eisemann*, 204 F.3d at 396.[7]

In short, the record here falls short of the high bar needed to impose sanctions. To say that, however, is not to countenance Burns's conduct in this case. Far from it. Burns's conduct fell short of meeting professional standards of courtesy and candor. But while Burns may well have been out of his depth in a federal courtroom, "ignorance of legal requirements do[es] not

---

[7] Although Eastern and Viacom do not seek sanctions under Rule 11 of the Federal Rules of Civil Procedure, the conduct about which they complain is, in many respects, the kind of conduct that Rule 11 was meant to redress. And Plaintiffs' dismissal of the case, including the copyright claim, largely accords with the principle behind Rule 11's safe-harbor provision. *See* Fed. R. Civ. P. 11(c)(2) (providing a safe-harbor from Rule 11 sanctions if, upon notice of the opposing party's motion, a party withdraws or appropriately corrects the sanctionable filing "within 21 days"). Of course, that does not accord with Burns's description of the voluntary dismissal here as nothing more than a "tactical maneuver[]." (Pls.' Opp'n 14; *see also id.* at 16 ("Plaintiff . . . decided to change its tactical position.")). Needless to say, should Burns or his clients reassert meritless claims, in this forum or others, sanctions might well be appropriate; to that end, if another permutation of this case makes its way back to this Court, the parties shall file a related case statement to ensure that the new case is assigned to the undersigned.

10

amount to the intentional abuse of judicial process that is the target of protective awards of attorneys' fees." *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F.Supp. 1348, 1360 (S.D.N.Y. 1982). And while Burns's dealings with opposing counsel *outside* the courtroom may have fallen particularly short of professional standards, awarding attorneys' fees requires more than that. It requires *clear* bad faith, which generally means *persistent* misconduct that rises above mere incompetence or petulance or even an unfortunate mix of the two. As a result, sanctions are not warranted based on Burns' present failings, however unfortunate they may be.

## CONCLUSION

For the reasons given above, Eastern's motion for sanctions, joined by Viacom, is DENIED. The Clerk of Court is directed to terminate Docket Nos. 55 and 58.

SO ORDERED.

Date:  October 5, 2016
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

11